Argued and submitted August 4, 2015, affirmed March 1, 2017

Jack BROCKWAY
and Carolyn Brockway, Oregon residents,
*Plaintiffs-Appellants,*

*v.*

ALLSTATE PROPERTY AND
CASUALTY INSURANCE COMPANY,
an Illinois company,
*Defendant-Respondent.*

Clackamas County Circuit Court
CV12090074; A155335

391 P3d 871

Robert C. Muth argued the cause for appellants. With him on the briefs was Kilmer, Voorhees & Laurick, P. C.

Ryan J. Hall argued the cause for respondent. With him on the brief was Cole Wathen Leid Hall, P. C.

Before Sercombe, Presiding Judge, and Hadlock, Chief Judge, and Tookey, Judge.*

---
* Hadlock, C. J., *vice* Nakamoto, J. pro tempore.

**SERCOMBE, P. J.**

This case involves an insurance dispute between plaintiffs and defendant, Allstate Property and Casualty Insurance Company (Allstate). After a theft at their home, plaintiffs filed claims with Allstate, their insurance carrier, under two policies. More than two years after the loss, Allstate denied coverage for the loss and plaintiffs brought an action against Allstate relating to that denial seeking, among other things, damages for breach of contract and for breach of the implied covenant of good faith and fair dealing. Allstate moved for summary judgment, arguing that the action was untimely in light of a two-year suit-limitation provision contained in the insurance contracts. The trial court agreed and granted the motion. Plaintiffs appeal the resulting general judgment in favor of Allstate, raising two assignments of error. In their first assignment, plaintiffs contend that the court erred in granting the motion "in light of * * * evidence supporting [plaintiffs']" position that Allstate should be estopped from invoking the suit-limitation provision. In their second assignment of error, plaintiffs argue that, in any event, the court erred in granting summary judgment on their claim for breach of the implied covenant of good faith and fair dealing because that claim "did not come into existence until Allstate issued its denial letter," and the action was filed within two years of that denial. As explained below, we affirm.

Because the trial court granted a defense motion for summary judgment, we state the facts in the light most favorable to plaintiffs. *Shell v. Schollander Companies, Inc.*, 358 Or 552, 554 n 1, 369 P3d 1101 (2016).

On September 6, 2009, plaintiffs discovered that a hole had been cut in their fence, and that property had been stolen from their backyard. They reported the theft to the police and, on September 8, 2009, called their Allstate agent to inform him of the theft. After their initial contact with the Allstate agent, plaintiffs discovered that additional property was missing (some from their boat and some from their travel trailer) and, in the summer of 2010, they talked with their Allstate agent about the additional missing items. On September 10, 2010, plaintiffs participated in a

telephone conference with an Allstate investigator regarding the items they claimed had been stolen during the theft incident. During that telephone call, the investigator did not mention the "contractual provision in the insurance policies which required [them] to file a lawsuit or any other claim arising from this loss within two years from the date of the loss itself."

On September 17, 2010, Allstate sent a letter to plaintiffs regarding its investigation of their claims. The letter informed plaintiffs that they were required to provide Allstate with a sworn statement of proof of loss, and to include "documentation that supports the ownership and value of any stolen items claimed." (Boldface omitted.) Allstate also informed plaintiffs that the "statute of limitations on this claim expires 2 years from the date of loss," insisted on "complete compliance with all of the terms of the [insurance] policy and the laws of Oregon," reserved all of its rights and defenses in conjunction with the policy, and stated that "[n]o waiver or estoppel of any kind is intended, nor may any be inferred." Thereafter, Allstate sent plaintiffs a number of letters seeking additional documentation or information and stating that it was continuing to investigate the claimed loss. In September 2011, Allstate requested that plaintiffs participate in examinations under oath. It conducted those examinations in October 2011. After those examinations, Allstate again sought additional information and documents and continued to investigate the loss until February 2012. In many, but not all, of its letters to plaintiffs, Allstate repeated its admonishment that it insisted on compliance with all policy terms, reserved its rights and defenses, and that no waiver or estoppel of any kind was intended or should be inferred. In February 2012, Allstate denied plaintiffs' claims based on its determination that plaintiffs had misrepresented material facts and failed to cooperate with the investigation. Allstate also pointed out that "Section I—Conditions" of plaintiffs' insurance policies provide:

> "No one may bring an action against us in any way related to the existence or amount of coverage or the amount of loss for which coverage is sought, under a coverage to which Section I—Conditions applies, unless:

"(a) there has been full compliance with all policy terms; and

"(b) *the action is commenced within two years after the date of the loss.*"[1]

(Emphasis added; boldface omitted.)

Plaintiffs commenced this action against Allstate on September 5, 2012. In its answer, Allstate raised as an affirmative defense the suit-limitation provision of the insurance policies. Allstate later sought summary judgment, asserting that plaintiffs' case should be dismissed in light of the suit-limitation provision because it was filed approximately three years after the loss and was, therefore, precluded as a matter of law. Plaintiffs responded that there were genuine issues of fact regarding whether Allstate was estopped from relying on the suit-limitation provisions as a bar to their claim:

"Clearly Plaintiffs were justified in relying on Allstate's conduct since each and every letter, including letters from Allstate's lawyer, included the date of loss of September 6, 2009 and recited that Allstate was still <u>continuing</u> to investigate the claim. Even more telling is the letter from Allstate's attorney after the purported two-year limitation stating 'Allstate can neither admit or deny coverage at this time.'"

(Underscoring in original.) In plaintiffs' view, that conduct created genuine issues of fact regarding estoppel. Plaintiffs

---

[1] As Allstate points out, loss as a result of theft falls within Section I of the policies, and "Section I—Conditions" applies to such losses.

Furthermore, as Allstate also points out, those provisions are consistent with ORS 742.240, which states:

"A fire insurance policy shall contain a provision as follows:

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, and unless commenced within 24 months next after inception of the loss."

Both insurance policies at issue in this case insure against fire losses, and we have held that ORS 742.240 applies to homeowner's insurance policies. *See Herman v. Valley Ins. Co.*, 145 Or App 124, 126 n 1, 928 P2d 985 (1996), *rev den*, 325 Or 438 (1997) (although, "by its terms, ORS 742.240 applies only to fire insurance policies," as it has been construed, "it applies to homeowner's insurance policies as well" (citing *Hatley v. Truck Insurance Exchange*, 261 Or 606, 494 P2d 426 (1972))).

also asserted that their claim for breach of the duty of good faith arose under the General Condition provision of the insurance contracts:

"Plaintiffs are alleging a claim for breach of the duty of good faith arising from Allstate's claims handling as set forth above, which under Oregon law is separate and distinct from a claim for breach of the express terms of the insurance contract. Thus, the applicable provision for actions against Allstate relating to the claim for breach of the covenant of good faith is found in the General Provision section, wherein an action 'must be commenced within two years of the date the cause of action accrues' not two years from the inception of loss or damage."

(Citation omitted.) Because, in their view, the claim for breach of the duty of good faith accrued when Allstate denied their insurance claims in February 2012, plaintiffs contended that that claim, at least, was not time barred. As to that contention, Allstate replied that plaintiffs could not maintain their claim for breach of the duty of good faith as a matter of law, regardless of when the denials occurred.

The trial court held a hearing on the summary judgment motion. At the hearing, among other things, the court asked the parties to discuss the applicability of ORS 742.056, which provides:

"Without limitation of any right or defense of an insurer otherwise, none of the following acts by or on behalf of an insurer shall be deemed to constitute a waiver of or an estoppel to assert any provision of a policy or of any defense of the insurer thereunder:

"(1)  Acknowledgment of the receipt of notice of loss or claim under the policy.

"(2)  Furnishing forms for reporting a loss or claim, for giving information thereto, or for making proof of loss, or receiving or acknowledging receipt of any such forms or proofs completed or uncompleted.

"(3)  Investigating any loss or claim under the policy or engaging in negotiations looking toward a possible settlement of any such loss or claim."

After hearing the parties' arguments, the court granted the motion for summary judgment based on the Section I

two-year suit limitation. Accordingly, it entered a general judgment in favor of defendant.

We will affirm a grant of summary judgment if, viewing the summary judgment record in the light most favorable to the adverse party, we determine that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *Jones v. General Motors Corp.*, 325 Or 404, 420, 939 P2d 608 (1997); ORCP 47 C.

As noted, plaintiffs raise two assignments of error on appeal. In their first assignment of error, they contend that there are issues of fact regarding estoppel and, therefore, the trial court erred in granting summary judgment based on the suit-limitation provision.

It is undisputed in this case that the insurance contracts contain a clause providing that no one may bring an action against Allstate "related to the existence or amount of coverage or the amount of loss for which coverage is sought" for a claimed loss such as the one at issue in this case unless, among other things "the action is commenced within two years after the date of the loss." It is also undisputed that plaintiffs' action was commenced more than two years after the date of loss in this case. Nonetheless, plaintiffs assert, the trial court should not have ruled in favor of Allstate with respect to any of the claims set forth in the complaint because the doctrine of equitable estoppel applies. Specifically, in plaintiffs' view, the evidence presented on summary judgment "clearly demonstrates issues of fact on the issue of estoppel; *i.e.* affirmative conduct on the part of Allstate * * * which [plaintiffs were] reasonably justified in relying upon."

"Under the doctrine of equitable estoppel, 'a person may be precluded by his act or conduct, or silence when it is his duty to speak, from asserting a right which he otherwise would have had.'" *Day v. Advanced M&D Sales*, 336 Or 511, 518, 86 P3d 678 (2004) (quoting *Marshall v. Wilson*, 175 Or 506, 518, 154 P2d 547 (1944)). In "proper circumstances, an insurer may be [equitably] estopped from asserting a suit limitation provision as a defense to liability on an insurance policy." *Herman v. Valley Ins. Co.*, 145 Or App 124, 133, 928

P2d 985 (1996), *rev den*, 325 Or 438 (1997). The elements of equitable estoppel are as follows:

> "[T]here must (1) be a false representation; (2) it must be made with knowledge of the facts; (3) the other party must have been ignorant of the truth; (4) it must have been made with the intention that it should be acted upon by the other party; (5) the other party must have been induced to act upon it."

*Day*, 336 Or at 518-19 (internal quotation marks and brackets omitted); *see Herman*, 145 Or App at 133-34. For a plaintiff to invoke the doctrine of equitable estoppel, the insurance company "must have done something that amounted to an affirmative inducement that would cause [the] plaintiff to delay" in bringing his or her action. *Herman*, 145 Or App at 134 (internal quotation marks omitted); *see Lyden v. Goldberg*, 260 Or 301, 304-05, 490 P2d 181 (1971). Furthermore, there must be "justifiable reliance by the party seeking to invoke estoppel, and that reliance must be reasonable." *Herman*, 145 Or App at 134 (internal quotation marks omitted). Finally, as relevant to the circumstances of this case, under ORS 742.056, as a matter of law, an insurance company's investigation of a loss or claim under an insurance policy does not estop the insurance company from asserting "any provision of [the insurance] policy or of any defense of the insurer thereunder."

In this case, viewed in the light most favorable to plaintiffs, the record does not contain evidence "from which an objectively reasonable juror could find an estoppel." *Herman*, 145 Or App at 134. There is no evidence that Allstate made a misrepresentation to plaintiffs regarding the suit-limitation provision. Instead, the evidence is that, on September 17, 2010, Allstate informed plaintiffs that their time to file an action relating to their claims "expires 2 years from the date of loss." *See id.* (noting that, although the insurer was not required to "remind" the plaintiff of "the suit limitation provision in her policy," it nonetheless did so). Furthermore, in its letters, Allstate repeatedly stated that it reserved all its rights and defenses and that no waiver or estoppel was intended or should be inferred. *See id.* (noting insurer's repeated warnings that it would not waive its rights

under insurance policy and that no waiver or estoppel was intended or should be implied). Furthermore, Allstate's numerous communications with plaintiffs stated that it was continuing to investigate their claim.[2] There is no evidence in the record suggesting that that was not the case and, under ORS 742.056, Allstate's investigation of plaintiffs' claims cannot be used to estop Allstate from asserting the suit limitation. In sum, we conclude that, on the facts in the summary judgment record, viewed in the light most favorable to plaintiffs, no objectively reasonable factfinder could conclude that Allstate should be estopped from raising the suit-limitation provision as a defense in this case. *See Herman*, 145 Or App at 134 (on summary judgment, no evidence from which an objectively reasonable factfinder could find that insurer should be estopped from raising suit-limitation provision where record showed no false representations, and the insurer reminded the plaintiff of suit-limitation provision in insurance policy and warned the plaintiff that it would not waive its rights under the policy and that no waiver or estoppel was intended or should be implied). *Cf. Wright v. State Farm Mutual Automobile Ins. Co.*, 223 Or App 357, 371-72, 196 P3d 1000 (2008) (genuine issues of material fact existed regarding waiver of suit-limitation provision where letter from insurer that was sent three years after the expiration of the policy's suit-limitation provision stated that the plaintiff had coverage for her claim and the only "remaining issues [were] liability and damages due to" the plaintiff (internal quotation marks omitted)). Accordingly, we reject plaintiffs' first assignment of error.

---

[2] We note that, as they did before the trial court, plaintiffs emphasize that Allstate sent letters more than two years after the date of loss that stated that Allstate was continuing to investigate their claim and that plaintiffs' lack of cooperation was impeding the investigation. They assert that, to be consistent with their present assertion of the suit-limitation provision, Allstate "should have written, 'This claim is now barred and Allstate is closing its file.'" As we explained in *Herman*, a suit-limitation is not a condition of forfeiture, which "disallows claims that otherwise are covered under a policy." 145 Or App at 131. Instead, a suit-limitation provision "does *not* nullify insurance coverage. Rather, it precludes an insured from starting an action against its insurer once the limitation period had passed, regardless of the extent of coverage." *Id.* (emphasis added). Furthermore, for purposes of evaluating the issue of estoppel, Allstate correctly observes that letters sent more than two years after the date of loss could not "have influenced the decision by [plaintiffs] not to file suit" before the end of that two year period.

In their second assignment of error, plaintiffs argue that, in any event, the trial court erred in granting summary judgment as to their claim for breach of an implied covenant of good faith. They contend that that claim is not covered by the Section I suit-limitation provision and is, instead, governed by a different suit limitation provision in the insurance contracts. Specifically, the policies, in the General Conditions, set forth a default suit-limitation as follows:

> "No one may bring an action against us unless there has been full compliance with all policy terms.

> "Any action against us to which neither the Action Against Us provision located in Section I—Conditions nor the Action Against Us provision located in Section II—Conditions applies must be commenced within two years of the date the cause of action accrues."

(Boldface omitted.) It is that default suit-limitation provision that plaintiffs contend applies to their claim for a breach of the duty of good faith. Plaintiffs point out that the Section I suit-limitation provision applies to an action "in any way related to the existence or amount of coverage or the amount of loss for which coverage is sought, under a coverage to which Section I—Conditions applies." They assert that the claim in question does not relate to the existence or amount of coverage or the amount of loss for which coverage is sought. Instead, it relates to Allstate's conduct in processing and investigating the claim. Thus, in their view, their action based on that claim had to be brought within two years of the date it accrues and, they assert, the claim did not accrue until Allstate denied coverage.

Allstate responds that plaintiffs cannot circumvent the Section I suit limitation through their claim for breach of the duty of good faith and fair dealing. According to Allstate, contrary to plaintiffs' assertion, only the "Section I suit limitation" has "any relevance in this matter." Allstate further asserts, in the alternative, that, in the circumstances here, plaintiffs cannot maintain their claim for breach of the implied duty of good faith, which "does not vary the substantive terms of the bargain" but, instead, only effectuates the reasonable expectations of the parties to the

contract. (Internal quotation marks omitted.) In Allstate's view, in light of the summary judgment record in this case, plaintiffs' claim for breach of the duty of good faith and fair dealing fails as a matter of law.

With respect to that issue, plaintiffs reply that they can maintain an action for breach of the duty of good faith based on the facts in the summary judgment record. They assert:

> "Allstate's conduct was contrary to [plaintiffs'] reasonable expectations. [Plaintiffs] expected that Allstate would fairly evaluate and investigate the claim. A jury could find that * * * Allstate's conduct in taking more than 17-months to evaluate a simple property theft, requiring Examinations under Oath and production of documents past the limitation deadline and the issuance of a denial asserting misrepresentation and concealment well past the limitation deadline to be a breach of the duty of good faith and fair dealing."

Plaintiffs argue, as they did with respect to the issue of estoppel, that "the evidence and conduct of Allstate, affirmative as it was, reasonably induced [plaintiffs] not to commence any legal action prior to September 6, 2011." Accordingly, in plaintiffs' view, the "facts presented warrant review by a trier of fact." We agree with Allstate that, based on the record on summary judgment, there are no issues of fact regarding the alleged breach of the duty of good faith and fair dealing and that, under the circumstances, plaintiffs cannot maintain that claim as a matter of law. Accordingly, we address only that issue.

As explained in *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001), we may affirm the ruling of a lower court on an alternative basis when certain conditions are met:

> "The first condition is that, if the question presented is not purely one of law, then the evidentiary record must be sufficient to support the proffered alternative basis for affirmance. That requires: (1) that the facts of record be sufficient to support the alternative basis for affirmance; (2) that the trial court's ruling be consistent with the view of the evidence under the alternative basis for affirmance;

and (3) that the record materially be the same one that would have been developed had the prevailing party raised the alternative basis for affirmance below. In other words, even if the record contains evidence sufficient to support an alternative basis for affirmance, if the losing party might have created a *different* record below had the prevailing party raised that issue, and that record could affect the disposition of the issue, then we will not consider the alternative basis for affirmance. The second condition is that the decision must be correct for a reason other than that upon which the lower court relied. Third, and finally, the reasons for the lower court's decision must be either (a) erroneous or (b) in the reviewing court's estimation, unnecessary in light of the alternative basis for affirmance."

(Emphasis in original.) The requirement that the record be "materially the same one as would have been developed had the prevailing party raised the alternative basis for affirmance below" is of particular importance on summary judgment. *See Eklof v. Steward*, 360 Or 717, 736, 385 P3d 1074 (2016) (that "criterion is of particular importance where * * * the [party opposing summary judgment] had no reason to adduce evidence on an issue that was not raised in the summary judgment motion").

Here, Allstate asserted before the trial court that plaintiffs could not maintain a claim for breach of the duty of good faith and fair dealing. To the extent that, on appeal, Allstate relies on different arguments in support of that contention, we conclude that the record is materially the same as would have been developed had the arguments been raised below. In support of their claim for breach of the implied duty of good faith and fair dealing, plaintiffs rely on the same conduct that they assert estopped Allstate from relying on the suit-limitation provision. In particular, plaintiffs assert a breach of the duty of good faith and fair dealing based on Allstate's continued investigation and communications with them, which they say reasonably induced them not to commence any legal action prior to September 6, 2011, when the two-year period in the Section I suit-limitation provision expired. Because plaintiffs' claim for breach of the duty of good faith is premised on the same conduct that they assert supported the application of estoppel to this case, in the circumstances of this case, we are convinced that the

record on summary judgment, which includes affidavits and documentation detailing plaintiffs' description of interactions with Allstate through the time that Allstate denied the claim, is sufficient to support the alternative basis. In other words, given the nature of the claims and defenses in this case, plaintiffs created the same record that would have been created had the issue been addressed before the trial court. *See Eklof*, 360 Or at 736. Accordingly, it is appropriate to consider the alternative basis for affirmance.

We begin by observing that plaintiffs' claim for breach of the duty of good faith and fair dealing in this case "sounds in contract." *Employers' Fire Ins. v. Love It Ice Cream*, 64 Or App 784, 791, 670 P2d 160 (1983) (insurance first party bad faith claim sounds in contract). In other words, plaintiffs' claim for breach of the duty of good faith is a claim for breach of the insurance contracts. Every "contract contains an implied duty of good faith." *Uptown Heights Associates v. Seafirst Corp.*, 320 Or 638, 645, 891 P2d 639 (1995). "The purpose of that duty is to prohibit improper behavior in the performance and enforcement of contracts, and to ensure that the parties will refrain from any act that would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Klamath Off-Project Water Users v. PacifiCorp*, 237 Or App 434, 445, 240 P3d 94 (2010), *rev den*, 349 Or 602 (2011) (internal quotation marks omitted).

The duty of good faith and fair dealing is to be applied in a manner that will effectuate the objectively reasonable expectations of the parties to the contract. *Id.* In particular, because the rights and duties of the parties to an insurance policy are contractual, "the duties of each are limited to those derived from the policy." *Safeco Ins. Co. v. Masood*, 264 Or App 173, 178, 330 P3d 61, *rev den*, 356 Or 638 (2014) (internal quotation marks omitted). An "implied duty of good faith and fair dealing [cannot] be construed in a way that changes or inserts terms into a contract." *Id.*; *see Uptown Heights Associates*, 320 Or at 645 (implied contractual obligation of good faith cannot serve to vary the terms of a contract, nor does it provide a remedy for an unpleasantly motivated act that is expressly permitted by contract). Instead, the law imposes that duty "in contracts to facilitate

performance and enforcement in a manner that is consistent with the terms of the contract." *Masood*, 264 Or App at 178 (internal quotation marks omitted).

Under those principles, "if a written contract between the parties expressly allows for a particular remedy by one of the parties, in the face of a specified breach, the parties' objectively 'reasonable expectations' under the contract include invocation of that remedy in the face of that breach. The party invoking its express, written contractual right does not, merely by doing so, violate its duty of good faith." *Uptown Heights Associates*, 320 Or at 645.

Here, we conclude that, viewed in the light most favorable to plaintiffs, there is not a genuine issue of material fact with respect to a breach of the duty of good faith and fair dealing, and Allstate is entitled to judgment as a matter of law. We begin by noting that plaintiffs emphasize that, in many of its communications, Allstate failed to state its view that any action to enforce plaintiffs' claims had to be commenced on or before September 6, 2011. However, that two-year limitation provision is contained in the insurance contracts and state statute and was pointed out by Allstate in an early letter to plaintiffs. More importantly, the insurance contracts impose no duty on Allstate to remind plaintiffs of the terms thereof, *Herman*, 145 Or App at 134, and the implied duty of good faith cannot be construed in a way that inserts new terms into the contracts. Plaintiffs had no objectively reasonable expectation that Allstate would inform them of the suit-limitation set forth in the written contracts, much less that Allstate would repeat that information having once included it in a communication with plaintiffs during its investigation of their claims.

Likewise, the remaining conduct asserted by plaintiffs in this case cannot support their claim for breach of the implied duty of good faith and fair dealing. Again, in its letters, Allstate repeatedly informed plaintiffs that it continued to investigate their claims; it did not make any representation that could reasonably have led them to believe that their claims would inevitably be accepted. Further, as we noted above, there is no evidence that, despite its communications, Allstate was not, in fact, investigating the claims.

To the contrary, Allstate's communications reflect its continued attempts to ascertain the losses attributable to the theft of plaintiffs' property, and plaintiffs point to nothing in the record suggesting that such investigation was improper. Furthermore, contrary to plaintiffs' assertion, there is no evidence that Allstate engaged in behavior to reasonably "induce [plaintiffs] not to commence any legal action prior to September 6, 2011." To the contrary, as we discussed with respect to the first assignment of error, Allstate repeatedly informed plaintiffs that it insisted on compliance with all policy terms, reserved its rights and defenses, and that no waiver or estoppel of any kind was intended or should be inferred. In light of those admonishments, along with all of the other circumstances in this case, no reasonable juror could conclude that Allstate breached its duty of good faith and fair dealing in this case. In short, none of the conduct plaintiffs assert on Allstate's part contravened plaintiffs' reasonable expectations based on the terms of the contracts. Accordingly, regardless of whether the Section I suit-limitation provision applies, the trial court did not err in granting summary judgment as to plaintiffs' claim for breach of the implied duty of good faith and fair dealing.

Affirmed.